

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA

## TAMPA DIVISION

**BRANDEN WABE,**
Plaintiff,

v.

**MORGAN AUTO GROUP LLC d/b/a PORSCHE OF TAMPA,**
a Florida limited liability company,
and
**BANK OF AMERICA, N.A.,**
Defendants.

Case No.: _8:26-CV-2254-MSS-LSG_

/

## COMPLAINT FOR DECLARATORY RELIEF, VIOLATION OF THE TRUTH IN LENDING ACT, EQUITABLE ACCOUNTING, AND DAMAGES

Plaintiff, Branden Wabe ("Plaintiff"), appearing pro se, alleges upon personal knowledge as to his own acts and upon information and belief as to all other matters, as follows:

# I. Nature of the Action

1. This action arises from a consumer motor vehicle retail installment transaction involving the purchase of a used 2026 Porsche Macan from Morgan Auto Group LLC d/b/a Porsche of Tampa on or about July 7, 2026.
2. The transaction, as represented to Plaintiff, was documented as a retail installment sale in which Morgan Auto Group LLC d/b/a Porsche of Tampa appeared on the face of the Retail Installment Sale Contract as the Seller-Creditor.
3. Shortly after execution of the original Retail Installment Sale Contract, Plaintiff discovered that the vehicle identification number ("VIN") identified in the contract did not correspond to the vehicle delivered into Plaintiff's possession.
4. The sales representative at Morgan Auto Group LLC d/b/a Porsche of Tampa notified Plaintiff of the discrepancy. In response, Morgan Auto Group LLC d/b/a Porsche of

1



Tampa required Plaintiff to execute a second Retail Installment Sale Contract containing a corrected VIN.

5. Although the second contract was executed several days after the original transaction, the replacement agreement reflected an execution date corresponding to the original transaction date rather than the date upon which Plaintiff actually executed the replacement agreement.

6. Following execution of the replacement agreement, Plaintiff discovered additional irregularities concerning the transaction, including inaccuracies contained within the records submitted to the Florida Department of Highway Safety and Motor Vehicles concerning ownership, titling, lien notation, transaction classification, and odometer disclosure.

7. Although certain title-related inaccuracies were subsequently corrected after Plaintiff contacted both the dealership and the Florida Department of Highway Safety and Motor Vehicles, additional discrepancies remain unresolved.

8. Following assignment or transfer of the retail installment obligation for servicing or ownership, Plaintiff began receiving separate monthly billing statements from Bank of America identifying two separate account numbers, both purporting to arise from Plaintiff's purchase of the same 2026 Porsche Macan.

9. Both Bank of America statements identify substantially identical payment obligations, substantially identical interest rates, and the same payment due date despite Plaintiff having purchased only one vehicle and executed only one operative retail installment transaction.

10. The existence of two active servicing accounts arising from a single retail installment transaction creates uncertainty concerning the identity of the operative obligation, the validity of any assignment, the servicing history of the account, the ownership of the receivable, and the legal rights and obligations of the respective parties.

11. Plaintiff further seeks judicial determination concerning which Retail Installment Sale Contract constitutes the operative agreement, whether the original agreement was effectively superseded or rescinded, whether both contracts were transmitted or assigned, whether duplicate servicing records were created, and whether Defendants' records accurately reflect the transaction actually entered into by the parties.

12. Plaintiff does not seek relief based upon speculation but instead seeks judicial resolution of substantial factual and legal uncertainties created by Defendants' own records, documentation, conduct, and servicing activities.

# II. Jurisdiction and Venue

13. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Count III arises under the Truth in Lending Act, 15 U.S.C. § 1601 et seq.

14. This Court possesses supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts.

15. Venue is proper within the Middle District of Florida pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred within this judicial district.

2

# III. Parties

16. Plaintiff Branden Wabe is a natural person and consumer residing within the State of Florida.

17. Defendant Morgan Auto Group LLC d/b/a Porsche of Tampa is a Florida limited liability company engaged in the business of selling motor vehicles and extending or arranging consumer financing through retail installment transactions. At all times material hereto, Morgan Auto Group LLC d/b/a Porsche of Tampa conducted business at 103 East Fowler Avenue, Tampa, Florida 33612.

18. Upon information and belief, Morgan Auto Group LLC d/b/a Porsche of Tampa acted as the Seller-Creditor identified upon the face of the Retail Installment Sale Contract executed by Plaintiff.

19. Defendant Bank of America, N.A., is a national banking association authorized to conduct business within the State of Florida and, upon information and belief, acquired, services, owns, or otherwise administers the retail installment obligation that is the subject of this action.

20. The precise legal capacity in which Bank of America acquired Plaintiff's account, including whether by assignment, purchase, servicing transfer, participation, or other means, is presently unknown to Plaintiff and is uniquely within Defendants' possession.

# IV. General Factual Allegations

21. On or about July 7, 2026, Plaintiff purchased a used 2026 Porsche Macan from Morgan Auto Group LLC d/b/a Porsche of Tampa through a Retail Installment Sale Contract.

    a. The Retail Installment Sale Contract identified Morgan Auto Group LLC d/b/a Porsche of Tampa as the Seller-Creditor.
    b. The disclosed annual percentage rate was 7.99%.
    c. The amount financed was $71,351.66.
    d. The disclosed finance charge was $18,696.58.
    e. The total of payments was $90,040.24.
    f. The transaction contemplated seventy-two (72) monthly installment payments.
    g. The scheduled monthly payment was $1,250.67.
    h. Payments were scheduled to begin on August 6, 2026.
    i. The transaction also included a down payment of approximately $19,000, resulting in a disclosed total sale price exceeding the amount financed.

22. Plaintiff executed the Retail Installment Sale Contract in reliance upon the representations contained therein and upon the understanding that the written agreement accurately described the motor vehicle being purchased.

23. After taking possession of the vehicle, Plaintiff compared the vehicle identification number physically affixed to the vehicle with the VIN identified within the Retail Installment Sale Contract.

24. Plaintiff discovered that the VIN contained within the executed Retail Installment Sale Contract did not correspond to the vehicle actually delivered into Plaintiff's possession.

3

25. Specifically, the VIN identified within the original Retail Installment Sale Contract ended in "0719," whereas the vehicle delivered to Plaintiff bore a VIN ending in "1288."

26. Plaintiff was promptly notified by a sales representative at Morgan Auto Group LLC d/b/a Porsche of Tampa regarding the discrepancy.

27. Morgan Auto Group LLC d/b/a Porsche of Tampa, in an attempt to cure the discrepancy, required Plaintiff to execute replacement documentation identifying the corrected VIN.

28. Upon information and belief, the replacement Retail Installment Sale Contract was executed several days after July 7, 2026, approximately July 11, 2026.

29. Notwithstanding the date upon which Plaintiff actually executed the replacement contract, the replacement agreement reflects an execution date of July 7, 2026.

30. Plaintiff did not execute the replacement agreement on July 7, 2026.

31. The discrepancy concerning the execution date creates uncertainty regarding the chronology of contract formation, assignment, funding, and the operative agreement governing the transaction.

32. Following execution of the replacement Retail Installment Sale Contract, Plaintiff obtained and reviewed records relating to the titling and registration of the subject vehicle maintained by the Florida Department of Highway Safety and Motor Vehicles.

33. Those records contained numerous material inaccuracies concerning the transaction.

34. Among other things, the records reflected that Morgan Auto Group LLC d/b/a Porsche of Tampa remained identified as the owner of the vehicle despite Plaintiff having entered into a retail installment purchase transaction.

35. The records further classified the transaction as a lease rather than a financed retail installment sale.

36. The records failed to properly identify or record the security interest associated with the transaction.

37. The odometer information submitted in connection with the title and registration process was likewise inaccurate.

38. Plaintiff contacted both Morgan Auto Group LLC d/b/a Porsche of Tampa and the Florida Department of Highway Safety and Motor Vehicles to report the foregoing discrepancies.

39. Following Plaintiff's efforts, certain inaccuracies within the State's records were corrected.

40. Although corrected, the existence of multiple material errors concerning ownership, transaction type, lien notation, and odometer disclosure demonstrates that multiple aspects of the transaction were processed inaccurately after execution of the Retail Installment Sale Contract.

41. The necessity of correcting numerous independent transaction records further raises questions concerning the accuracy of Defendants' internal records relating to the transaction.

42. Thereafter, Plaintiff began receiving periodic billing statements from Defendant Bank of America concerning the subject vehicle transaction.

43. Bank of America established two separate account numbers arising from Plaintiff's purchase of the same 2026 Porsche Macan.

44. One account bears a number ending in 9455 and reflects a payment due in the amount of approximately $1,247.19.

4

45. A second account bears a number ending in 8510 and reflects a payment due in the amount of approximately $1,250.67.

    a. Both accounts identify the collateral as a 2026 Porsche Macan.
    b. Both accounts reflect substantially identical interest rates.
    c. Both accounts require payment on the same due date.

46. Plaintiff owns only one 2026 Porsche Macan and entered into only one retail vehicle purchase transaction.

47. Plaintiff has never knowingly entered into two separate financing transactions concerning the same motor vehicle.

48. Upon information and belief, at least one of the two Bank of America accounts does not accurately reflect the legal rights and obligations arising from the parties' transaction.

49. Plaintiff is presently unable to determine which account, if either, constitutes the operative obligation because the information necessary to answer that question is exclusively within Defendants' possession.

50. Each monthly statement further characterizes the obligation as a "loan account."

51. The underlying transaction executed between Plaintiff and Morgan Auto Group LLC d/b/a Porsche of Tampa was documented as a Retail Installment Sale Contract identifying the transaction as a consumer credit sale rather than a direct extension of money by a lender.

52. The legal distinction between a retail installment credit sale and a loan is significant because each transaction arises from different legal relationships, different methods of extending credit, and different statutory frameworks governing the parties' rights and obligations.

53. Plaintiff is unable to determine from the documents presently available whether Morgan Auto Group LLC d/b/a Porsche of Tampa extended credit as the Seller-Creditor identified on the Retail Installment Sale Contract, merely arranged financing on behalf of another entity, acted as a credit broker, or otherwise functioned in a different legal capacity than represented on the face of the contract.

54. The documents presently available to Plaintiff do not disclose the precise sequence of underwriting, funding, assignment, ownership, servicing transfer, or account boarding.

55. Those facts are material to determining the true nature of the transaction, the identity of the creditor, the legal effect of any assignment, and the rights and obligations of each Defendant.

56. Both Bank of America billing statements further contain language stating, in substance, that the communication constitutes an attempt to collect a debt and that information obtained will be used for that purpose.

57. Plaintiff does not presently know the legal capacity in which Bank of America acquired or services the obligation, including whether it acquired the account directly from Morgan Auto Group LLC d/b/a Porsche of Tampa, through an intermediary, pursuant to an assignment, or through another transaction.

58. Because of the existence of two executed retail installment contracts, multiple material title errors, inaccurate governmental filings, duplicate servicing accounts, differing payment demands, and uncertainty concerning the ownership and servicing history of the

obligation, Plaintiff cannot determine from the face of the available documents the complete chain of title to the receivable or the identity of the enforceable obligation.

59. The records necessary to resolve those issues, including underwriting records, funding records, assignment documents, account boarding records, servicing records, internal communications, and transaction histories, are within the exclusive possession, custody, or control of Defendants.

60. Plaintiff therefore seeks declaratory and equitable relief, together with all other relief authorized by law, to determine the parties' respective rights and obligations and to require a complete accounting of the transaction from origination through the present.

# COUNT I — DECLARATORY JUDGMENT REGARDING ARBITRATION

# (Against Morgan Auto Group LLC d/b/a Porsche of Tampa)

61. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

62. Defendant is expected to assert, that the transaction is subject to a purported arbitration provision contained in a preprinted retail installment contract concerning the purchase and financing of the vehicle. Plaintiff does not concede that the purported arbitration provision is valid, enforceable, applicable to the claims asserted herein, or that Defendant possesses any right to invoke it.

63. The arbitration provision purports to require that any claim or dispute arising out of or relating to the credit application, purchase, condition of the vehicle, contract, or any resulting transaction or relationship be resolved exclusively through binding arbitration at the election of either party.

64. The arbitration provision further purports to delegate questions concerning its own interpretation, scope, enforceability, and arbitrability to a private arbitrator rather than to a court of competent jurisdiction.

65. Plaintiff did not knowingly, intelligently, or voluntarily waive the judicial and procedural rights associated with access to the courts, including the right to a jury trial, meaningful discovery, appellate review, public adjudication, and participation in collective proceedings.

66. The arbitration provision was presented as a non-negotiable term within a standardized contract of adhesion and did not provide Plaintiff with any meaningful opportunity to reject, modify, or opt out of arbitration.

67. Plaintiff was not offered a separate arbitration agreement, separate consideration, or any independent benefit in exchange for the waiver of judicial rights.

68. The arbitration provision contains no mechanism by which Plaintiff could decline arbitration while preserving the remainder of the contractual relationship.

69. Plaintiff alleges that the arbitration provision was imposed on a take-it-or-leave-it basis and constituted a mandatory condition precedent to obtaining financing and completing the transaction.

70. Plaintiff alleges that Defendant possessed superior bargaining power, superior knowledge, and exclusive control over the terms of the transaction.

6

71. The arbitration provision expressly states that discovery rights and appellate rights are more limited than those available in a judicial proceeding and acknowledges that rights available in court may not exist in arbitration.

72. The arbitration provision requires Plaintiff to waive any right to participate in class actions, representative actions, collective proceedings, consolidated proceedings, or private-attorney-general actions.

73. At the same time, Defendant expressly retained the right to pursue judicial remedies, including repossession, deficiency actions, recovery of collateral, self-help remedies, and proceedings for statutory or individual injunctive relief.

74. Plaintiff alleges that the reservation of judicial remedies for Defendant while simultaneously restricting Plaintiff to individual arbitration creates a substantially one-sided allocation of rights and remedies.

75. The arbitration provision further states that, in the event of a conflict between the rules of the selected arbitration organization and the contract itself, the contractual language shall control, thereby permitting Defendant to supersede procedural safeguards otherwise available through the arbitration forum.

76. Plaintiff alleges that the arbitration provision is procedurally unconscionable because:

   a. It was contained in a preprinted adhesion contract.
   b. Plaintiff lacked meaningful bargaining power.
   c. Plaintiff was not afforded an opportunity to negotiate its terms.
   d. Plaintiff was not afforded an opportunity to opt out of arbitration.
   e. Plaintiff received no separate consideration for waiving judicial and procedural rights.
   f. The waiver of judicial rights was presented as a mandatory condition of the transaction.

77. Plaintiff alleges that the arbitration provision is substantively unconscionable because:

   a. It limits discovery.
   b. It restricts appellate review.
   c. It prohibits collective proceedings.
   d. It preserves judicial remedies that primarily benefit Defendant.
   e. It attempts to delegate threshold issues of enforceability to a private arbitrator.
   f. It permits contractual provisions to override otherwise applicable arbitration procedures.

78. Plaintiff further alleges that there was no true meeting of the minds regarding the waiver of judicial and procedural rights because Plaintiff was not provided with a meaningful opportunity to reject arbitration or pursue the transaction under alternative terms.

79. Plaintiff alleges that the arbitration provision operates as an impermissible prospective waiver of substantive rights guaranteed under Florida law and federal law to the extent that it prevents Plaintiff from effectively vindicating statutory claims.

80. Plaintiff alleges that enforcement of the arbitration provision would substantially prejudice Plaintiff by depriving Plaintiff of procedural safeguards available in state and federal courts.

81. An actual and present controversy exists concerning the enforceability, validity, interpretation, and scope of the arbitration provision.
82. Plaintiff seeks a declaration that:

    a. The arbitration provision is procedurally unconscionable.
    b. The arbitration provision is substantively unconscionable.
    c. The arbitration provision lacks mutual assent.
    d. Plaintiff did not knowingly and voluntarily waive judicial rights.
    e. The arbitration provision is unenforceable in whole or in part.
    f. Defendant has waived enforcement to the extent Defendant invoked judicial remedies inconsistent with arbitration.
    g. This Court retains jurisdiction over all claims asserted herein.

83. Plaintiff requests that the Court declare the arbitration provision invalid, unenforceable, unconscionable, void, or otherwise inapplicable to the claims asserted in this action.

WHEREFORE, Plaintiff demands judgment declaring the arbitration provision unenforceable, retaining jurisdiction over this action, awarding taxable costs where authorized by law, and granting such further relief as the Court deems just and proper.

# COUNT II — DECLARATORY JUDGMENT
# (Against Morgan Auto Group LLC d/b/a Porsche of Tampa and Bank of America, N.A.)

84. Plaintiff realleges and incorporates paragraphs 1 through 60 as though fully set forth herein.
85. This Count is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Federal Rule of Civil Procedure 57, and, alternatively, Chapter 86, Florida Statutes.
86. An actual, present, and justiciable controversy exists between Plaintiff and Defendants concerning the identity, validity, enforceability, ownership, assignment, and servicing of the retail installment obligation arising from Plaintiff's purchase of a used 2026 Porsche Macan.
87. On or about July 7, 2026, Plaintiff executed a Retail Installment Sale Contract identifying Morgan Auto Group LLC d/b/a Porsche of Tampa as the Seller-Creditor.
88. The original Retail Installment Sale Contract identified a vehicle identification number ending in "0719."
89. The vehicle actually delivered to Plaintiff bore VIN WP1AG2A56TLB41288, ending in "1288."
90. After Plaintiff notified Morgan Auto Group LLC d/b/a Porsche of Tampa that the original Retail Installment Sale Contract identified a vehicle other than the vehicle delivered to him, Morgan Auto Group LLC d/b/a Porsche of Tampa required Plaintiff to execute a second Retail Installment Sale Contract containing the corrected VIN.
91. Plaintiff executed the replacement Retail Installment Sale Contract several days after the original transaction, on or about July 11, 2026.

92. Nevertheless, the replacement Retail Installment Sale Contract states that it was executed on July 7, 2026.

93. Plaintiff did not execute the replacement Retail Installment Sale Contract on July 7, 2026.

94. The original and replacement Retail Installment Sale Contracts therefore contain materially different vehicle-identification information and create uncertainty concerning which agreement governs the parties' legal relationship.

95. The existence of the two contracts also creates uncertainty concerning whether the original agreement was rescinded, superseded, cancelled, corrected, replaced, assigned, funded, or otherwise treated as an enforceable obligation.

96. Upon information and belief, Morgan Auto Group LLC d/b/a Porsche of Tampa transmitted, sold, assigned, or otherwise transferred one or both Retail Installment Sale Contracts to Bank of America.

97. The timing, terms, and subject matter of any assignment are presently unknown to Plaintiff and are within Defendants' possession, custody, or control.

98. Following the purported assignment or transfer, Bank of America generated or maintained two separate account numbers relating to Plaintiff's purchase of the same vehicle.

99. Bank of America transmitted separate billing statements to Plaintiff under the two account numbers.

100. The statements identify substantially identical payment amounts, interest rates, and payment due dates.

101. Plaintiff purchased only one vehicle and undertook only one intended retail installment obligation.

102. The creation or maintenance of two servicing accounts arising from the same vehicle purchase creates a genuine and immediate uncertainty as to:

    a. Which Retail Installment Sale Contract is presently being enforced.

    b. Whether Morgan Auto Group LLC d/b/a Porsche of Tampa assigned the original contract, the replacement contract, or both contracts.

    c. Whether Bank of America claims ownership of one or more separate receivables.

    d. Which Bank of America account number corresponds to the operative obligation.

    e. Whether both account numbers remain active.

    f. Whether payments made under one account will be properly credited to the operative obligation.

    g. Whether Plaintiff faces the risk of duplicate billing, duplicate collection activity, duplicate credit reporting, or inconsistent account histories.

    h. Whether any lien or security interest asserted against the vehicle is based upon the original contract, the replacement contract, or another document.

    i. The amount, if any, that Plaintiff is legally required to pay and the entity legally entitled to receive and enforce those payments.

103. Plaintiff cannot safely determine where or how payment should be made without risking misapplication of funds, duplicate collection activity, an asserted default under another account, or inconsistent reporting concerning the same alleged obligation.

104. The controversy is not hypothetical because Defendants have created, transmitted, or maintained presently operative contractual and servicing records purporting to impose payment obligations upon Plaintiff.

105. Defendants' respective rights and obligations are adverse to Plaintiff's interests because Defendants claim, or appear to claim, the present right to administer, collect, enforce, or maintain records concerning the disputed retail installment obligation.

106. Plaintiff has a bona fide, actual, and practical need for a judicial declaration establishing the parties' respective rights and obligations before additional payments become due and before any default, collection activity, repossession effort, lien enforcement, or credit reporting occurs under an incorrect or duplicate account.

107. A declaration by this Court will resolve substantial uncertainty concerning the operative agreement, the proper account, the validity and scope of any assignment, the identity of the party entitled to payment, and Plaintiff's continuing contractual obligations.

108. The requested declaration will materially affect the parties' present conduct and will not constitute an advisory opinion.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment declaring:

A. That only one enforceable retail installment obligation arose from Plaintiff's purchase of the 2026 Porsche Macan bearing VIN WP1AG2A56TLB41288.

B. Which Retail Installment Sale Contract constitutes the operative and enforceable agreement governing the transaction.

C. Whether the original Retail Installment Sale Contract was rescinded, cancelled, superseded, replaced, or otherwise rendered unenforceable when Defendants required Plaintiff to execute the replacement agreement.

D. The actual date upon which the replacement Retail Installment Sale Contract was executed and the legal effect, if any, of the different date appearing on its face.

E. Whether Morgan Auto Group LLC d/b/a Porsche of Tampa assigned or transferred the original contract, the replacement contract, or both contracts.

F. Whether Bank of America owns, services, administers, or otherwise possesses enforcement rights under the operative Retail Installment Sale Contract.

G. Which Bank of America account number, if either, corresponds to the operative retail installment obligation.

H. That Defendants may not collect, service, report, accelerate, repossess, or otherwise enforce more than one obligation arising from Plaintiff's single vehicle purchase.

I. That any duplicate or nonoperative account must be closed, cancelled, corrected, or designated as having no separate payment obligation.

J. That all payments made by Plaintiff must be credited solely to the single operative obligation and may not be divided, duplicated, or applied in a manner that produces a separate alleged delinquency.

K. The correct principal balance, payment history, payment due date, and amount presently owed under the operative agreement.

L. The identity of the person or entity legally entitled to receive Plaintiff's payments and enforce any security interest arising from the operative agreement.

M. The contract and account upon which any lien or security interest in the vehicle is

10

based.

N. The respective rights, duties, and legal relations of Plaintiff, Morgan Auto Group LLC d/b/a Porsche of Tampa, and Bank of America concerning the transaction.

O. That Defendants correct their contractual, servicing, ownership, lien, and account records to conform to the Court's declarations.

P. Such supplemental relief as may be necessary or proper under 28 U.S.C. § 2202 and section 86.061, Florida Statutes.

Q. Plaintiff's taxable costs to the extent authorized by law.

R. Such other and further relief as the Court deems just and proper.

# COUNT III — VIOLATION OF 15 U.S.C. § 1662(2)
# (Against Morgan Auto Group LLC d/b/a Porsche of Tampa)

110. Plaintiff realleges and incorporates paragraphs 1 through 60 to the extent relevant to this Count.

111. Defendant represented, advertised, and disclosed that Plaintiff was required to provide a down payment of $19,000 in connection with the extension of consumer credit for the purchase of the vehicle.

112. Pursuant to 15 U.S.C. § 1662(2), a creditor may not advertise or represent that a specified down payment is required unless the creditor usually and customarily arranges transactions requiring that amount.

113. Upon information and belief, Defendant did not usually and customarily require a down payment of $19,000 in substantially similar transactions.

114. Defendant further disclosed the alleged $19,000 down payment in the retail installment contract and related financing documents.

115. The disclosure of the down payment was false, inaccurate, misleading, inflated, incomplete, or otherwise failed to reflect the amount actually paid, credited, or required from Plaintiff.

116. Defendant knew, or reasonably should have known, that the disclosure and representation of the $19,000 down payment did not accurately reflect the true terms of the transaction.

117. By representing and disclosing an inaccurate down payment amount, Defendant failed to provide the clear and meaningful disclosures required by the Truth in Lending Act and Regulation Z.

118. Defendant's conduct deprived Plaintiff of the ability to accurately evaluate the credit transaction, compare available financing options, and understand the true amount financed, finance charge, total payments, and total sale price.

119. Plaintiff reasonably relied upon Defendant's representations and disclosures concerning the required down payment in entering into the transaction.

120. As a direct and proximate result of Defendant's conduct, Plaintiff suffered monetary damages and other economic injuries.

11

121.     Defendant's conduct constitutes a violation of the Truth in Lending Act, 15 U.S.C. § 1662(2), Regulation Z, and the federal policy requiring accurate and meaningful disclosure of consumer credit terms.

WHEREFORE, Plaintiff demands judgment against Defendant for actual damages, statutory damages, taxable costs, prejudgment interest as authorized by law, declaratory relief, and any further relief the Court deems just and proper.

# Count IV-Equitable Accounting
# (Against All Defendants)

122.     Plaintiff realleges and incorporates paragraphs 1 through 60 and paragraphs 84 through 108 to the extent relevant and not inconsistent with this Count.

123.     Plaintiff seeks an equitable accounting because the transactions, accounts, and records giving rise to this action are unusually complex, materially inconsistent, and largely within the exclusive possession, custody, and control of Defendants.

124.     This action does not arise from a routine payment dispute or a simple creditor-debtor relationship. Rather, it arises from substantial uncertainty concerning the formation, documentation, funding, assignment, servicing, ownership, and administration of the alleged obligation.

125.     The transaction includes, among other things:

   a. An original Retail Installment Sale Contract identifying an incorrect vehicle identification number.
   b. A subsequently executed replacement contract correcting the vehicle identification number.
   c. A dispute concerning the actual execution date of the replacement agreement.
   d. Inaccurate title and registration information submitted to the Florida Department of Highway Safety and Motor Vehicles characterizing the transaction as a lease rather than a financed retail installment sale.
   e. Inaccurate ownership information.
   f. Omission of the purported security interest.
   g. Inaccurate odometer information.
   h. The creation and servicing of two separate Bank of America accounts arising from the purchase of a single vehicle.

126.     Plaintiff purchased and possesses only one motor vehicle that is the subject of this action. Nevertheless, Defendants' records reflect two separate account numbers, separate billing statements, and separate payment demands concerning that single transaction.

127.     From the documents presently available to him, Plaintiff cannot determine:

   a. Which Retail Installment Sale Contract constitutes the operative and enforceable agreement.
   b. Whether the original contract was cancelled, replaced, assigned, funded, or otherwise retained as an active obligation.

c.  Whether the replacement contract was validly executed and assigned.
d.  Whether one or both contracts were transferred to Bank of America.
e.  Which account, if either, represents the lawful and enforceable obligation.
f.  Whether one account was intended to replace or supersede the other.
g.  Whether duplicate servicing or payment records were created.
h.  Whether the transaction was funded once or more than once.
i.  Whether the same receivable was boarded, transferred, or recorded more than once.
j.  What payments, credits, adjustments, reversals, or corrections were applied to each account.
k.  How the balances presently demanded by Defendants were calculated.

128.    A conventional breach-of-contract or damages claim ordinarily presupposes that the claimant can identify the governing contract, the contracting parties, the amount owed, the payments made, the remaining balance, and the credits or adjustments that should have been applied.

129.    Those foundational facts are disputed or presently unknowable here because Defendants' own documents and account records reflect multiple contracts, an incorrect vehicle identification number, a replacement agreement with a disputed execution date, inaccurate governmental filings, and two separate accounts demanding payment for one vehicle.

130.    Plaintiff therefore lacks an adequate remedy at law because he cannot presently determine the existence, amount, ownership, validity, or enforceability of the alleged obligation without first obtaining an accounting of the records controlled by Defendants.

131.    A legal claim for damages would be incomplete and premature because Plaintiff cannot identify the full nature, source, or amount of his injury without determining, among other things:

a.  Whether one of the accounts was created by mistake.
b.  Whether both contracts were assigned or funded.
c.  Whether one contract or account was cancelled.
d.  Whether the transaction was funded once or twice.
e.  Whether a receivable was improperly duplicated or transferred.
f.  Whether one or both accounts were improperly boarded into Bank of America's servicing system.
g.  Whether payment ledgers, balances, or servicing histories were duplicated.
h.  Whether Defendants are attempting to enforce more than one obligation arising from a single purchase.

132.    Without access to Defendants' internal records, any attempt to allege a fixed amount of damages, identify the operative agreement, or determine the party entitled to enforce the alleged obligation would necessarily require speculation.

133.    The accounting sought is not merely a demand to determine how much money one party owes another. Plaintiff seeks to determine what transaction actually occurred, what obligation was created, which agreement governs, whether and how the obligation was funded and assigned, who presently owns or services it, what payments and credits

have been applied, why two accounts were created, and how the balances presently demanded were calculated.

134.     The information necessary to answer those questions includes underwriting records, funding records, assignment documents, purchase and transfer records, account-boarding records, servicing records, payment histories, correction records, cancellation records, title submissions, internal communications, and agreements governing the transfer, ownership, or servicing of Plaintiff's alleged obligation.

135.     Those records are uniquely within the possession, custody, or control of Defendants and cannot be independently reconstructed by Plaintiff through publicly available information or the limited documents presently in his possession.

136.     Plaintiff cannot independently determine or reconstruct Defendants' funding process, assignment history, transfer dates, account-boarding instructions, servicing history, internal corrections, cancellation history, payment applications, or the reason multiple accounts were maintained for a single vehicle purchase.

137.     Plaintiff does not seek an accounting based upon speculation concerning securitization, unidentified trusts, hypothetical transfers, or generalized challenges to the financial system.

138.     Instead, Plaintiff seeks an accounting based upon documented irregularities appearing in the transaction itself, including multiple executed contracts, an acknowledged vehicle-identification error, a replacement agreement, inaccurate governmental filings, and duplicate servicing accounts.

139.     The complexity and uncertainty surrounding the transaction are the direct result of Defendants' own conduct, documentation, account administration, and recordkeeping, and are not the product of Plaintiff's actions.

140.     To the extent Defendants contend that the transaction is straightforward, the books and records within their possession should readily identify the operative contract, the complete funding and assignment history, the account-boarding and servicing history, the payments and credits applied, the basis for each balance, and the reason multiple accounts were created or maintained for one vehicle purchase.

141.     Because liability, enforceability, ownership, and the existence and amount of any damages depend upon information contained almost entirely within Defendants' records, an equitable accounting is necessary to determine the parties' respective rights and obligations.

142.     Plaintiff has no plain, practical, adequate, or complete remedy at law through which he can obtain or reconstruct the foregoing information absent equitable intervention by the Court.

WHEREFORE, Plaintiff respectfully requests that the Court enter an order requiring Defendants to render a full and complete accounting of the transaction, including all contracts, underwriting records, funding records, assignment and transfer documents, account-boarding records, servicing records, payment histories, balance calculations, title and registration submissions, correction and cancellation records, communications concerning the creation, maintenance, transfer, correction, or cancellation of any account arising from Plaintiff's vehicle purchase, and any other documents necessary to identify the operative obligation, its ownership, its servicing history, and the basis for all amounts demanded, together with such other relief as the Court deems just and proper.

14

Respectfully submitted,

/s/ Branden Wabe

Branden Wabe, Plaintiff Pro Se

208 NE Monroe Circle N #304
St. Petersburg, Florida 33702

Telephone: 727-776-8999
Email: Brandenwabe@gmail.com

15